AO 91
Rev. 11/97

**ORIGINAL**

| UNITED STATES DISTRICT COURT | CENTRAL DISTRICT OF CALIFORNIA |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br><br>CURTIS DAVID FAHLBERG | DOCKET NO.<br><br>MAGISTRATE'S CASE NO.<br>9- **09-0977M** |

Complaint for violation of Title 18, United States Code, Section 2423(c)

| NAME OF MAGISTRATE JUDGE<br><br>Honorable   **Frederick F. Mumm** | UNITED STATES<br>MAGISTRATE JUDGE | LOCATION<br><br>Los Angeles, CA |
|---|---|---|
| DATE OF OFFENSE<br><br>Between September 28, 2003 and June 27, 2006 | PLACE OF OFFENSE<br><br>Los Angeles County | ADDRESS OF ACCUSED (IF KNOWN) |

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:

Between on or about September 28, 2003 and on or about June 27, 2006, defendant CURTIS DAVID FAHLBERG traveled in foreign commerce, from Los Angeles, California, to Cambodia, and engaged in illicit sexual conduct, as defined in Title 18, United States Code, Section 2324(f), with, among others, JANE DOE #2, JANE DOE #4, and JANE DOE #5, who are minors.

FILED
CLERK, U.S. DISTRICT COURT

MAY 11 2009

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:
   (See attached affidavit which is incorporated as part of this Complaint)

MATERIAL WITNESSES IN RELATION TO THIS CHARGE:

| Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge. | SIGNATURE OF COMPLAINANT<br><br>MARK D. MATTISON |
|---|---|
| | OFFICIAL TITLE<br>SPECIAL AGENT -- DHS/ICE |

Sworn to before me and subscribed in my presence,

| SIGNATURE OF MAGISTRATE JUDGE(1)<br><br>HONORABLE   **Frederick F. Mumm** | DATE<br><br>May 11, 2009 |
|---|---|

1) See Federal Rules of Criminal Procedure rules 3 and 54.
RED:VOC        REC: Detention

**AFFIDAVIT**

I, MARK D. MATTISON, being duly sworn, do hereby depose and state:

## I.    INTRODUCTION

1.    I am a Special Agent ("SA") with the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE").  I have held my current position with ICE since June 2005.  ICE was created in 2003 by combining the former investigative functions of the Immigration and Naturalization Service and the United States Customs Service.  I have a Bachelor of Science Degree in Administration of Justice from Pennsylvania State University.  I am a graduate of the Criminal Investigator Training Program and the Immigration and Customs Enforcement Special Agent Training Program at the Federal Law Enforcement Training Center.  I am currently assigned to investigate financial and counter-proliferation crimes as a part of the ICE Office of the Assistant Special Agent in Charge, Los Angeles International Airport ("ASAC/LAX").

2.    During the course of my employment with ICE, I have obtained experience and received training with respect to conducting investigations of criminal and civil violations of Titles 8, 18, 19, 21, and 31 of the United States Code, and

1

various other federal statutes.  I have received training in the area of child pornography and child exploitation, and I have had the opportunity to observe and review numerous examples of child pornography in all forms of media, including computer storage media.  In addition, I have conducted investigations involving the possession of child pornography, the importation and smuggling of child pornography, child sexual tourism, smuggling, customs and immigration fraud, and various other crimes.  During the investigation of these cases, I have participated in the execution of search and arrest warrants and seized evidence of violations of United States law on many occasions, many of which involved child pornography offenses.  ICE is responsible for enforcing federal criminal statues involving, but not limited to, the sexual exploitation of children under Title 18, United States Code, Section 2251, et seq.

3.    This affidavit is made in support of a criminal complaint and arrest warrant charging CURTIS DAVID FAHLBERG with violating Title 18, United States Code, Section 2423(c), which states, "Any United States citizen or alien admitted for permanent residence who travels in foreign commerce, and engages in any illicit sexual conduct with another person shall be fined under this title or imprisoned not more than 30 years, or both."

2

The definition of "illicit sexual conduct," is set forth in Title 18, United States Code, Section 2423(f).

4.    The facts set forth in this affidavit are based upon my participation in this investigation, encompassing my personal knowledge, observations and experience, as well as information obtained from my review of investigative reports, interviews, and debriefings with other participating law enforcement agents and officers.

5.    This affidavit is intended to show that there is sufficient probable cause for the requested complaint and arrest warrant and does not purport to set forth all of my knowledge of, or investigation into, this matter.

6.    To the extent that any information in this affidavit is not within my personal knowledge, it was made known to me through reliable law enforcement sources, and I believe it to be true.

II.  INVESTIGATION

1.    **FAHLBERG's Production of Child Pornography of Child-Victim JANE DOE #1**

7.    On or about June 27, 2006, U.S. Customs and Border Protection ("CBP") Officers at Los Angeles International Airport ("LAX") encountered FAHLBERG, who is a United States citizen and was traveling using a United States passport (passport number

3

712172131:   issued on 2/28/05), on a return trip he was making from Thailand to the United States.   FAHLBERG was in possession of two laptop computers and a cellular phone that contained numerous images of children in various states of undress. Subsequently, the two laptop computers and the cellular phone belonging to FAHLBERG were detained pursuant to the government's border search authority, and ICE Digital Forensic Agent ("DFA") Margaret Condon conducted a forensic examination of these items. This forensic examination revealed additional images of children in various states of undress and sexually explicit e-mails written by FAHLBERG detailing his sexual exploitation of children in Thailand and Cambodia.   When this forensic examination took place, ICE SA Daniel Lombardi asked FAHLBERG about a young girl's image discovered on his computers. FAHLBERG identified this girl as "KEEM," and FALHBERG stated that she was approximately seven years old.   The photographs on FAHLBERG's computers showed "KEEM" topless at a beach and also photographed inside FAHLBERG's residence in Pattaya City, Thailand.

    8.   In December 2007, I reviewed investigative reports, spoke with ICE SA Paul Moore, and learned the following:

4

a.   In May 2007, SA Moore located and identified "KEEM" as child victim JANE DOE #1 in Pattaya City, Thailand. On August 17, 2007, SA Moore and Thai Foreign Service National ("FSN") Investigator Paisarn Changjongpradit interviewed JANE DOE #1 in Pattaya City, Thailand.  JANE DOE #1 stated that she would often go to "CD's" (FAHLBERG) condo during the daytime while her mother was working.[1]  JANE DOE #1 further stated that FAHLBERG would take nude photographs of her and that FAHLBERG would tell her how to pose nude so he could take photographs of her.  JANE DOE #1 stated that FAHLBERG had asked her to spread her legs apart when he took these photographs, but she refused to do so.  JANE DOE #1 said that, despite this refusal, FAHLBERG pulled her legs apart with his hands and took photographs of her "private" areas.  JANE DOE #1 pointed to her pubic area to describe the area that FAHLBERG photographed.

b.   JANE DOE #1 was asked how long FAHLBERG had been taking nude photographs of her, and JANE DOE #1 explained that FAHLBERG had done so ever since she was in the second grade.  At

---

[1]   In e-mails recovered from FAHLBERG's computers in June 2006, FAHLBERG regularly referred to himself as "CD," and this is the name that several of FAHLBERG's child victims used to identify FAHLBERG.

the time of this interview in August 2007, JANE DOE #1 was in the third grade.

       c.   JANE DOE #1 stated that most of the photographs FAHLBERG took of her were of her lying or positioned on FAHLBERG's bed. JANE DOE #1 also stated that FAHLBERG had taken "many" photographs of her naked. JANE DOE #1 stated that she had seen some of her naked photographs on FAHLBERG's computer in his condo. JANE DOE #1 further described the two computers FAHLBERG had at his condo as "a big one" (referring to a desktop computer) and a "small one" (referring to a laptop computer). JANE DOE #1 stated that she had seen naked photographs of herself and other young girl's photographs on the "big" computer in the condo.

       d.   JANE DOE #1 further described what she called "kids" naked photographs that she had also seen on the desktop computer. JANE DOE #1 stated that there were also naked photographs on the "small" laptop computer but they were of "older" girls.

       e.   JANE DOE #1 denied being touched by FAHLBERG apart from when FAHLBERG posed her for nude photographs.

2.    FAHLBERG's Molestation of Child-Victims JANE DOE #2, JANE DOE #3, JANE DOE #4, and JANE DOE #5

a.    The Identification of Child-Victims Molested by FAHLBERG in Cambodia

9.    In December 2007, I reviewed investigative reports, spoke with ICE SA Paul Moore, and learned the following:  Many of the photographs of children found on the computers FAHLBERG possessed when he was stopped at LAX in June 2006 and his computers were examined were photographs of children from the Svay Pak area of Cambodia, an area of the world renowned for its enslavement of young children who are forced to engage in prostitution with foreign pedophiles and child sex tourists.  As a result of assistance provided by Diplomatic Security Service Investigators in Cambodia, the Cambodian National Police ("CNP"), community leaders in Cambodia, and various non-governmental organizations ("NGOs") operating in Cambodia, these photographs were circulated and several of the children in these photographs were positively identified, including the girls identified below as JANE DOE #2, JANE DOE #3, JANE DOE #4, and JANE DOE #5.

b.    The Interview of Child-Victim JANE DOE #2

10.   In December 2007, I reviewed investigative reports, spoke with ICE SA Paul Moore, and learned the following:

a.   On July 17, 2007, SA Moore, ICE SA Robert King, and U.S. Diplomatic Security Service ("DSS") Investigator Sarin Vann interviewed JANE DOE #2, a fourteen-year-old Vietnamese girl who FAHLBERG had allegedly sexually abused in Phnom Penh, Cambodia.  JANE DOE #2 was shown a photograph of FAHLBERG with a young Asian female sitting on his lap that had been seized from FAHLBERG's computers in June 2006.  JANE DOE #2 confirmed that she was the young girl in the photograph and she knew the man in the photograph as "CD."[2]

b.   JANE DOE #2 stated that she was approximately twelve years old when the photograph was taken and that the photograph was taken in Phnom Penh, Cambodia.  JANE DOE #2 stated that the first time she met FAHLBERG was when a child procurer in the Svay Pak area of Cambodia took her to a hotel where FAHLBERG was waiting.  JANE DOE #2 stated that upon initially meeting with FAHLBERG he took her clothes off and then proceeded to remove his own clothes.  JANE DOE #2 stated that

---

2    Several photographs of JANE DOE #2 were recovered from the computers that were seized from FAHLBERG at LAX in June 2006. These images depicted JANE DOE #2 in various rooms and different states of dress.  These photographs appear to have been taken on several different occasions, and according to the forensic examination of the computer in which these photographs were found, the file folder containing these photographs was created on FAHLBERG's computer in 2005.

FAHLBERG then "played with her."   JANE DOE #2 stated that she
had never had sexual intercourse until meeting FAHLBERG.

        c.   JANE DOE #2 fully understood that sexual
intercourse involved the penetration of the vagina by a penis,
and JANE DOE #2 stated that FAHLBERG had sexual intercourse with
her.   JANE DOE #2 further stated that FAHLBERG penetrated her
with his penis during this first encounter with him in the hotel
and that it had hurt so much that she repeatedly told him to
stop.   JANE DOE #2 stated that FAHLBERG refused to stop and
continued until he ejaculated inside of her.   JANE DOE #2 added
that FAHLBERG asked her to put her mouth on his penis prior to
having sexual intercourse with him on this occasion but that she
refused to do so.

        d.   JANE DOE #2 stated that she had seen FAHLBERG
approximately five or six times over several months.   JANE DOE
#2 stated that each time FAHLBERG would have sexual intercourse
with her.   JANE DOE #2 added that each time FAHLBERG had
intercourse with her that FAHLBERG would remove a lubricant he
carried around in his pocket and put it on his penis.

        e.   JANE DOE #2 stated that on one of the occasions
that she had sex with FAHLBERG after their initial encounter,
FAHLBERG paid for her and another young girl to have sex with

him at the same time.  JANE DOE #2 stated that this other girl was forced to work in the Svay Pak area and have sex with foreigners, and JANE DOE #2 identified a photograph of this girl from one of the photographs recovered from FAHLBERG's computer.

f.   JANE DOE #2 stated that she observed FAHLBERG pay her procurer on each occasion when they had sexual intercourse. JANE DOE #2 noted that she was paid approximately $20.00 from the procurer after having sex with FAHLBERG.

g.   JANE DOE #2 stated that FAHLBERG would take photographs of her each time they would have sex.  JANE DOE #2 stated that most of the time she would have her clothes on when FAHLBERG photographed her, but he would take nude photographs of her as well.

c.   The Interview of Child-Victim JANE DOE #3

11.  In December 2007, I reviewed investigative reports, spoke with ICE SA Paul Moore, and learned the following:

a.   On July 17, 2007, SA Moore, SA King, and DSS Investigator Vann interviewed JANE DOE #3, an eleven-year-old Vietnamese girl who FAHLBERG had allegedly sexually abused in Phnom Penh, Cambodia.  JANE DOE #3 had been forced into prostitution in the Svay Pak area since approximately 2002 when

10

she was six years old, and she was rescued from Svay Pak in 2006.

        b.    During the interview, JANE DOE #3 was shown a photograph of FAHLBERG, and she immediately recognized the person in the photograph as a foreigner she had engaged in sexual activities with inside a brothel located in the Svay Pak area of Phnom Pen.

        c.    JANE DOE #3 stated that FAHLBERG came into the brothel in Svay Pak where she was forced to work as a child prostitute and that FAHLBERG selected her from a group of young girls who ranged in age from six years old to fifteen years old. JANE DOE #3 stated that FAHLBERG took her to a bedroom, sat her down, asked her how old she was, and told her to remove her clothes. After doing so, FAHLBERG took his clothes off as well. FAHLBERG then asked JANE DOE #3 to put her mouth on his penis. JANE DOE #3 stated that she then began to give FAHLBERG oral sex for approximately thirty minutes. JANE DOE #3 stated that while she was giving FAHLBERG oral sex, FAHLBERG put his finger into her vagina.

        d.    JANE DOE #3 stated that she knew that FAHLBERG ejaculated when receiving oral sex from her because "white water" came from FAHLBERG's penis and inside her mouth. JANE

DOE #3 added that after FAHLBERG ejaculated inside her mouth, he told her to wash her mouth out and paid her $1.00 or $2.00.

    e.    JANE DOE #3 stated that she did the same sex act with FAHLBERG approximately two or three times on different occasions. JANE DOE #3 stated that FAHLBERG tried to penetrate her vagina with his penis but she was too small. JANE DOE #3 stated that she had to tell him "no, no" because his penis would not fit inside her vagina. JANE DOE #3 stated that FAHLBERG eventually quit his attempts to penetrate her with his penis and told her to use her mouth on his penis.

    f.    JANE DOE #3 stated that she could not remember exactly when this had occurred but she believed she was six or seven years old at the time.

    g.    Finally, during the interview, JANE DOE #3 identified several photographs seized from FAHLBERG's computers as photographs of girls who she knew had been forced to have sex with foreigners in Svay Pak.

    d.    <u>The Interview of Child-Victim JANE DOE #4</u>

12. In December 2007, I reviewed investigative reports, spoke with ICE SA Paul Moore, and learned the following:

    a.    On July 18, 2007, SA Moore and DSS Vann interviewed JANE DOE #4, a fourteen year-old Vietnamese girl who

FAHLBERG had allegedly sexually abused in Phnom Penh, Cambodia. JANE DOE #4 was shown an image that was recovered from one of FAHLBERG's computers seized at LAX in June 2006.  JANE DOE #4 looked at the photograph and confirmed that it was her in the photograph.  JANE DOE #4 could not give an approximate date or her age when the photograph was taken, but she stated that it was taken in the Svay Pak area of Phnom Penh, Cambodia.

b.   JANE DOE #4 stated that she was forced to engage in sexual activity with foreigners when she lived in Svay Pak, and these sexual encounters involved her giving oral sex to foreign males.

c.   Specifically, JANE DOE #4 explained that when a foreigner arrived in Svay Pak, she and the other girls forced to work as child prostitutes would all be called together so that the foreigner could pick a girl from the group.  JANE DOE #4 added that such groups sometimes consisted of more than 20 girls who ranged in age from nine years old to fifteen years old. JANE DOE #4 estimated that she was called into these groups at least twice per week for more than one year, and she stated that she only performed oral sex on the foreigners and never had intercourse with them.  JANE DOE #4 added that the foreigners would pay the brothel owner, who, in turn, would pay her.  JANE

13

DOE #4 stated that she received approximately $5.00 for each time she performed oral sex on one of the brothel's customers.

        d.    JANE DOE #4 was shown a driver's license photograph of FAHLBERG, and JANE DOE #4 immediately identified FAHLBERG as a foreigner upon whom she had performed oral sex. JANE DOE #4 stated that she was unsure of the dates but stated that it was on two or three occasions over a one week period.

        e.    JANE DOE #4 stated that she observed FAHLBERG paying the brothel owner after she had given him oral sex. JANE DOE #4 stated that she had observed FAHLBERG in Svay Pak on several different occasions taking other young girls for sex. In addition, JANE DOE #4 identified several photographs of young girls seized from FAHLBERG's computers as photographs of other girls who lived in Svay Pak at the time that she did and who were forced to have sex with foreigners. These photographs included a photograph of JANE DOE #4's sister that was found on FAHLBERG's computers and that JANE DOE #4 stated was a picture of her sister taken when her sister was approximately 14 years old.

        d.    <u>The Interview of Child-Victim JANE DOE #5</u>

        13.   In December 2007, I reviewed investigative reports, spoke with SA Moore, and learned the following:

                                    14

a.   On September 1, 2007, SA Moore and DSS Investigator Vann interviewed JANE DOE #5, a seventeen-year-old Vietnamese girl who FAHLBERG had allegedly sexually abused in Phnom Penh, Cambodia.   Initially, JANE DOE #5 was interviewed in the presence of her grandmother, two Svay Pak community police officers, SA Moore, and DSS Investigator Vann.   During this interview, JANE DOE #5 identified herself in photographs recovered from FALHBERG's computers, and she admitted that she had been a child prostitute in Svay Pak since she was approximately 14 years old.   However, when shown a photograph of FAHLBERG, JANE DOE #5 glanced at the photograph and stated that she did not recognize the person in the photograph.

b.   After this interview concluded, SA Moore and DSS Investigator Vann left the Svay Pak area.   Within 10 minutes after leaving the area, DSS Inspector Vann received a phone call from JANE DOE #5.   During this telephone call, JANE DOE #5 informed DSS Investigator Vann that she did recognize the person in the photograph that was showed to her but that she did not feel comfortable speaking in front of the police officers who were present during her initial interview.

c.   SA Moore and DSS Investigator Vann arranged to meet with JANE DOE #5 at a location outside of Svay Pak and

15

reinterviewed JANE DOE #5.  During this subsequent interview, JANE DOE #5 was shown a photograph of FAHLBERG that had been seized from FAHLBERG's computers.  When presented with this photograph, JANE DOE #5 immediately stated that she recognized the person in this photograph, and JOHN DOE #5 stated that she had seen him in Svay Pak on several occasions.  JANE DOE #5 added that she had seen him specifically in the brothel where she worked.  JANE DOE #5 also identified FAHLBERG's from a driver's license photograph in which he had a full beard.

     d.     JANE DOE #5 stated that ever since she was fourteen years old she was forced into prostitution in the Svay Pak area of Phnom Penh and that she worked with numerous other girls between the ages of seven and fifteen in a brothel run by a heavyset, Vietnamese woman named "LI," who is now dead.

     e.     JANE DOE #5 identified a photograph of a heavyset, Vietnamese woman seized from FAHLBERG's computers as a photograph of LI, the child procurer who ran the brothel where JANE DOE #5 was forced into prostitution.

     f.     JANE DOE #5 stated that LI would call her and other young girls into her brothel when a foreigner arrived.  All of the girls would then be displayed for the foreigner, and the foreigner would pick a young girl for sex.

16

g.   JANE DOE #5 stated that she had observed FAHLBERG inside LI's brothel on such occasions, and JANE DOE #5 stated that FAHLBERG selected her on at least three occasions at the brothel to have sex with him.  JANE DOE #5 stated that FAHLBERG had sexual intercourse with her on all three occasions inside of the brothel.  JANE DOE #5 stated that she also performed oral sex on FAHLBERG but could not remember if it was on all three occasions.

h.   JANE DOE #5 stated that she understood what intercourse was and that it involved a man's penis penetrating her vagina.  JANE DOE #5 stated that she had intercourse with FAHLBERG.  JANE DOE #5 added that FALHBERG used a condom when he had sex with her as well as a lubricant on his penis that was gel-like and came in a tube.  JANE DOE #5 further stated that she knew that FAHLBERG ejaculated when he had intercourse with her because she observed sperm inside the condoms FAHLBERG used.

i.   JANE DOE #5 explained that FAHLBERG paid her $40 to $50 in United States currency after he was finished having sex with her, that she then gave the money to LI, and that LI, in turn, would pay her $10 to $20 for having sex with FAHLBERG.

j.   JANE DOE #5 identified herself as the person photographed in five images seized from FAHLBERG's computers in

17

June 2006 that were shown to her during the interview.  JANE DOE #5 stated that she could not identify who took these photographs but that they appeared to have been taken inside the brothel where she met foreigners for sex.  JANE DOE #5 added that it was common that foreigners would take photographs of her either before or after having sex with her.

 k. JANE DOE #5 was also shown five other photographs seized from FAHLBERG's computers that she identified.  JANE DOE #5 identified four of these photographs as photographs of other girls who worked as prostitutes in Svay Pak at the same time she did.  One of these photographs was a photograph of FAHLBERG and JANE DOE #2.  JANE DOE #5 identified the fifth of these photographs as a photograph of her older sister, who JANE DOE #5 stated was also forced into prostitution in Svay Pak.

### 3. The Identification of a Witness Who Drove FAHLBERG to Brothels In Cambodia Featuring Child Sex Workers

 14. In December 2007, I reviewed investigative reports, spoke with SA Moore, and learned the following:

 a. In e-mails recovered from the forensic examination of the computers FAHLBERG transported into the United States in June 2006, FAHLBERG mentioned a Cambodian taxi driver by the name of "CHANNA."  In August 2007, SA Moore located and identified "CHANNA" as Channa Touch in Phnom Penh,

18

Cambodia.  On August 31, 2007, SA Moore and DSS Investigator Vann interviewed Touch in Phnom Penh, Cambodia.  Touch stated that he had known FAHLBERG for the last four to five years. Touch stated that he had first met FAHLBERG at a bookstore in Phnom Penh.  Touch stated that FAHLBERG would call him when he was coming to Phnom Penh.  Touch further stated that approximately one week after meeting FAHLBERG he was hired as his driver.

   b.    Touch stated that he first took FAHLBERG to Svay Pak during this time.  Touch stated that he dropped FAHLBERG off near a brothel and waited for him outside.  Touch stated that FAHLBERG was usually in the brothel for one or two hours each time.

   c.    Touch stated that the girls in the brothel who FAHLBERG visited were approximately twelve to fourteen years of age or younger.  Touch stated that he had taken FAHLBERG to the brothel on at least ten different occasions since meeting FAHLBERG.  Touch stated that most of these occurrences were between 2003 and 2005.

   d.    Touch added that FAHLBERG would often bring candy and clothes to the girls at the brothel and that the clothes he brought on these occasions were "small, young girls clothes."

19

**5.    The Execution of a Search Warrant at FAHLBERG's
       Residence in Thailand**

15.  In December 2007, I reviewed investigative reports,
spoke with SA Moore, and learned the following:

a.    In October 2007, the RTP, Criminal Suppression
Division ("CSD"), in the aftermath of the ICE/Bangkok
investigation summarized above, secured a search warrant for
FAHLBERG's residence in Pattaya City, Thailand.

b.    On October 4, 2007, the RTP, CSD served the
search warrant at FAHLBERG's Pattaya City, Thailand residence.
The search of the residence resulted in the seizure of the
following items:  a Sony Computer, a Dell Computer, a Sony 128
mb "Thumb drive," an Olympus 32 mb XD camera memory card, six
miscellaneous CD's, seventeen mini-photo albums containing
numerous images of non-nude Asian children, ten Trojan Supra
condoms, and thirteen boxes of sexual enhancing drugs/aids.  The
seized items were documented and retained by the RTP, and the
Thai government has recently agreed to produce these items to
the United States government pursuant to a request made by
United States in accordance with a Mutual Legal Assistance
Treaty between the United States and Thailand.

6.    The **Mirandized** Interviews of FAHLBERG

16.   In December 2007, I reviewed investigative reports, spoke with SA Moore, and learned the following:

a.    On October 25, 2007, SA Moore interviewed FAHLBERG, who was represented by his attorney, Praphat Muangchamnong, and FAHLBERG stated the following:

i.    FAHLBERG initially stated he did not know why the RTP searched his residence and seized his computers and other items.  FAHLBERG stated that he had nothing illegal on the computers, including any child pornography.  However, FAHLBERG admitted that the police did seize two DVD's that contained child pornography.  FAHLBERG claimed that he found these DVD's outside of his condo and admitted to viewing the DVD's on at least one occasion.

ii.   FAHLBERG was then shown photographs of young girls that were recovered from his computer.  FAHLBERG stated that the images were taken in the Svay Pak area of Cambodia.  The first images were of a child identified as JANE DOE #2.  As noted above, JANE DOE #2, now fourteen years of age, was interviewed, and she identified FAHLBERG as having sexual intercourse with her on several occasions.  SA Moore asked FAHLBERG how old he believed that the girl in the photograph

21

was, and FAHLBERG replied, "She is definitely underage."
FAHLBERG stated the photographs were taken during late 2003 and
early 2004.

   iii. SA Moore showed additional photographs to
FAHLBERG, and FAHLBERG stated that he had taken the photographs
and most were taken inside a brothel within Svay Pak in
Cambodia.  However, at this point in the interview, FAHLBERG
only admitted to photographing these young girls in the brothels
where they were pictured, and he claimed that he only had sex
with girls in the brothel who were over eighteen years old.

   iv.  FAHLBERG stated that he had frequented Svay
Pak since approximately 2001 until sometime in 2004 when the
police closed it down.  FAHLBERG stated that during this time
period he had been to Svay Pak on approximately fifteen
different occasions.

   v.  At this time, FAHLBERG's attorney left the
room, and SA Moore asked FAHLBERG if he was comfortable speaking
without his attorney present.  FAHLBERG stated that it was not a
problem, that he wanted to continue speaking, that he wanted to
clear any suspicions about him, that he was aware that he was
not obligated to answer any questions posed to him, and that he
would speak without his attorney in the room.  Prior to resuming

the interview, FAHLBERG was again reminded that he was free to leave or stop answering questions at any time.

vi.   SA Moore asked FAHLBERG about several e-mails that were recovered from the laptop computers he owned. In one e-mail, dated August 8, 2003, FAHLBERG wrote "I don't worry how old a girl is if I like her.  My last girlfriend was 15." FAHLBERG was asked about this e-mail and its validity. FAHLBERG acknowledged that he did have a fifteen-year-old Thai girlfriend, named "Mae."  However, FAHLBERG claimed that he did not have sex with her until she turned sixteen.

vii.   In another e-mail, dated November 25, 2002, FAHLBERG wrote about meeting a mother offering her eleven-year-old daughter for marriage.  The message began, "Gawd, I luv this place!!!!" . . . She told that if I want to marry her I would have to wait till she is 16, but that she would be back down for four days at New Years and that I could go out with her then. She's only 11 years old!!!!!  She's not really all that great looking, but was pretty sharp and had a quick wit, so I may just have to thump her just to please her mother!!!!  Is this a great country or what!!!!!."  FAHLBERG acknowledged writing the e-mail, but he claimed that he was not going to have any

23

relationship with the girl until she reached sixteen years of age.

viii.   In e-mails, dated March 9, 2003 and March 11, 2003, FAHLBERG discussed "cops" in Phnom Penh taking his jewelry, camera, and phone after he was caught with an "underage" girl.   FAHLBERG admitted writing this e-mail and stated he was in a brothel in Svay Pak with a girl at least eighteen years of age.   FAHLBERG stated that the "mamasan" took the older girl out and switched her with an underage girl. FAHLBERG stated that when the police came in he was completely nude with the underage girl.   He added that he was not arrested but that the police took all his valuables and let him go.

ix.   In an e-mail, dated September 13, 2002, FAHLBERG wrote to a friend in Thailand, "I'll pick you up a carton of 505's at the airport.   Of course, that means that you'll have to find me a sweet "YOUNG" thing when I get there. Maybe one of the girls that plays outside of your office!!!." FAHLBERG acknowledged writing this e-mail.   SA Moore then showed FAHLBERG a photograph of JANE DOE #2 that SA Moore took when interviewing JANE DOE #2 in Phnom Penh, Cambodia in July 2007, as well as a photograph which depicted FAHLBERG on a bed with JANE DOE #2 sitting on his lap.   SA Moore asked how old JANE DOE

24

#2 was in this later photograph SA Moore showed to him, and FAHLBERG replied, "twelve."

x. FAHLBERG was then asked about his sexual activity with JANE DOE #2, and FAHLBERG explained that JANE DOE #2 was one of two girls who he had selected at a brothel in Svay Pak. FAHLBERG stated that JANE DOE #2 was on the bed with him and the other girl. FAHLBERG initially stated that he only kissed JANE DOE #2 while having sex with the other girl. He added that they were all naked and that JANE DOE #2 was only "stroking" the other girl and not him. FAHLBERG stated that he paid $40.00 USD or $50.00 USD for this encounter. However, FAHLBERG then stated that JANE DOE #2 had given him oral sex on no more than three separate occasions. FAHLBERG was asked about intercourse with JANE DOE #2, and he initially denied that he had intercourse with this child victim. However, FAHLBERG then admitted that he tried to penetrate JANE DOE #2 with his penis, but her vagina was "too small." FAHLBERG stated that these encounters with JANE DOE #2 took place sometime in 2004.

xi. FAHLBERG was then shown a photograph of JANE DOE #6, another child-victim identified during the investigation. FAHLBERG stated that he had "kissed and cuddled" with her.

xii. FAHLBERG was then shown a photograph of JANE DOE #4, a girl he had previously described as "spunky" and very young. FAHLBERG stated that he "kissed and cuddled" with her also.

xiii. FAHLBERG then admitted that he had had sexual relations with no more than seven underage girls. FAHLBERG stated that he had sexual intercourse with three or four girls who were fifteen to sixteen years old. In addition, FAHLBERG stated he had received oral sex from approximately three other girls who were younger, approximately twelve years of age or younger.

xiv. FAHLBERG was then shown a photograph of "LI," the Vietnamese woman who had been identified by SA Moore as a child procurer/brothel owner in the Svay Pak district of Phnom Penh, Cambodia. FAHLBERG admitted that she was an owner of one of the brothels that he frequented.

xv. FAHLBERG was then asked again about the recent search that was conducted by the RTP at his condominium in Thailand, specifically as it related to the seizure of the computers taken during the search. FAHLBERG admitted that the hard drive contained within the Dell Computer seized at his residence might contain images of nude children. FAHLBERG

26

further stated that the nude images are of the same children that SA Moore had shown him photographs of during the interview.

xvi.   The interview was unable to be completed that afternoon, and FAHLBERG agreed to meet on another occasion. FAHLBERG was advised of his <u>Miranda</u> rights in conjunction with the interview described above via a preprinted form.  FAHLBERG read and initialed his acknowledgment of each of his rights on this form.  FAHLBERG then signed the form, waiving his <u>Miranda</u> rights.

17.  In December 2007, I reviewed investigative reports, spoke with SA Moore, and learned the following:

a.   On October 25, 2007, SA Moore met with FAHLBERG and again reiterated that FAHLBERG did not have to answer questions per his rights under <u>Miranda</u>.  FAHLBERG again stated that he understood his rights and wished to answer questions without an attorney present.  During this interview, FAHLBERG stated the following:

i.   FAHLBERG was again asked about the computers seized by the RTP at his residence in Thailand, and he was specifically asked what would be found on the hard drives associated with those computers.  FAHLBERG explained that the

Dell Computer seized at his Thailand residence contained two removable hard drives.  FAHLBERG stated that this computer had originally been detained by U.S. CBP Officers at LAX in 2006 and was subsequently returned to him.  FAHLBERG stated that, on that occasion, prior to entering the United States, he removed a hard drive from that computer which contained sexually explicit photographs of children.  FAHLBERG stated that the remaining hard drive he brought back to the United States on that occasion contained only non-sexually explicit images of children.

ii.  FAHLBERG stated that he left the hard drive with the sexually explicit images of children on it in his condominium in Thailand on that occasion.  FAHLBERG stated that in the recent search of his condominium both Dell hard drives were seized.  FAHLBERG again stated that one of the hard drives would contain images of children who were completely nude and posed in sexually provocative positions.  FAHLBERG added that he photographed these children himself.

iii. FAHLBERG was shown images of some of the child victims who had been identified and interviewed in connection with this investigation.  Specifically, FAHLBERG was shown images of JANE DOE #2, JANE DOE #4, JANE DOE #5, and JANE

DOE #6.  FAHLBERG acknowledged that he had taken sexually explicit photographs of these children.

iv.  FAHLBERG also identified additional children who he had taken sexually explicit photographs of overseas. FAHLBERG stated he would take photographs of these children completely nude, and he took photographs of them in sexual poses to emphasize their pubic areas.  FAHLBERG stated that he would take the photographs usually before or after a sexual encounter with the child.  FAHLBERG then admitted that in the cases of JANE DOE #4, JANE DOE #5, and JANE #6 that, in addition to kissing and cuddling with these children, they had also performed oral sex on him.  FAHLBERG stated that in regards to JANE DOE #2, she also performed oral sex on him and that he tried to penetrate her vagina with his penis, as he admitted in his initial interview.

v.  FAHLBERG stated that he would enter brothels containing children and select a young girl to his liking. FAHLBERG stated that some of the "older" girls he would have sexual intercourse with would say that they were eighteen. FAHLBERG stated that he knew they were younger than eighteen, not only by their appearance, but also by the way they would act.  FAHLBERG stated that they would act "childish" and

29

"immature." FAHLBERG estimated their ages to be closer to fourteen to sixteen years of age.

        vi.   FAHLBERG explained that after selecting an "older" girl for sex, they would undress, and a younger girl (such as JANE DOE #2, JANE DOE #4, JANE DOE #5, or JANE DOE #6) would also be present in the room. FAHLBERG stated that the younger girl would perform oral sex on him prior to him having intercourse with the "older" girl.

   **7.   Records of FAHLBERG's Travels to Southeast Asia**

   18.   I have queried the CBP computer systems, which query passenger and travel itinerary information from all international flights that depart from, arrive at, or transit through the United States, for FAHLBERG's travel information. According to the CBP, FAHLBERG is a United States citizen, and, utilizing a United States passport for his travels, he has made a number of trips to Southeast Asia from the United States over the past 20 years. Travel records I have reviewed confirm that FAHLBERG has engaged in at least the following international travel between April 30, 2003 and June 27, 2006:

        a.   FAHLBERG departed LAX for Hong Kong International Airport ("HKG") aboard Cathay Pacific Airways flight number 881 on or about September 28, 2003, on his way to Thailand. On or

30

about April 20, 2004, traveling on a United States passport that expired on October 19, 2005, FAHLBERG returned from this trip abroad on an incoming flight into LAX from Hong Kong;

    b.    FAHLBERG departed LAX for HKG aboard Cathay Pacific Airways flight number 883 on or about September 24, 2004, on his way to Thailand.  On or about May 27, 2005, traveling on the same United States passport that he was traveling with on June 27, 2006, FAHLBERG returned from this trip abroad on an incoming flight into LAX from Hong Kong. Immigration stamps on the United States passport that FAHLBERG possessed on June 27, 2006 confirmed that FAHLBERG visited Cambodia during this trip.  Specifically, his passport information confirmed that FAHLBERG departed from Cambodia on May 7, 2005 and was admitted into Thailand that same date;

    c.    FAHLBERG departed LAX for HKG aboard Cathay Pacific Airways flight number 883 on or about October 11, 2005, on his way to Thailand.  On or about June 26, 2006, FAHLBERG departed from Thailand and he landed at LAX the following day. During this trip to Thailand, immigration stamps on the United States passport that FAHLBERG possessed on June 27, 2006 confirmed that FAHLBERG spent the period of at least December 3, 2005 to December 17, 2005 in Cambodia.

31

d.    Subsequent to June 27, 2006, FAHLBERG has continued to travel from the United States to Southeast Asia. For instance, FAHLBERG departed LAX for HKG aboard Cathay Pacific Airways flight number 883 on or about September 5, 2006. Moreover, FAHLBERG departed Dallas-Fort Worth International Airport for Suvarnabhumi International Airport (Bangkok International Airport) aboard American Airlines flight number 281 on or about September 3, 2007.[3]

## III. CONCLUSION

19.    Based on the foregoing, there is probable cause to believe that CURTIS DAVID FAHLBERG has violated Title 18, United

//

//

---

[3]    These travel records indicate that on each occasion since 2003 that FAHLBERG departed from the United States and traveled to Thailand, via Hong Kong or some other means, he departed from LAX, with the exception of his most recent departure from the United States in September 2007.

32

States Code, Section 2423(c), which makes it a crime for any United States citizen who travels in foreign commerce to engage in illicit sexual conduct with another person.

Mark D. Mattison
Special Agent
United States Immigration &
Customs Enforcement


SUBSCRIBED TO AND SWORN BEFORE ME
THIS _11th_ DAY OF 2009


UNITED STATES MAGISTRATE
Frederick F. Mumm