RONALD O. KAYE (No. 145051)
KAYE, McLANE & BEDNARSKI, LLP
234 E. Colorado Blvd. Suite 230
Pasadena, California 91101
Telephone: (626) 844-7660
Facsimile: (626) 844-7670
rok@kmbllp.com

Attorneys for Defendant
CURTIS DAVID FAHLBERG

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>CURTIS DAVID FAHLBERG,<br><br>  Defendants. | NO. CR 09-00683-MMM<br><br>**NOTICE OF MOTION; MOTION FOR BILL OF PARTICULARS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: January 11, 2010<br>Time: 1:15 p.m.<br>Crt: Hon. Margaret M. Morrow |

TO: ACTING UNITED STATES ATTORNEY GEORGE S. CARDONA, AND ASSISTANT UNITED STATES ATTORNEY ROBERT DUGDALE:

PLEASE TAKE NOTICE that on January 11, 2010 at 1:15 p.m. attorneys for Defendant Curtis David Fahlberg, or as soon thereafter as counsel may be heard, in the courtroom of the Honorable Margaret M. Morrow, will and hereby does move for a Bill of Particulars from the Government specifying precisely or significantly narrowing the date range on which: 1) he is alleged to have traveled in foreign commerce; and 2) engaged in illegal sexual conduct in violation of Title 18 U.S.C. § 2423(c).

This motion is made pursuant to Rules 7(f) and 12(b)(3)(B) of the Federal

Rules of Criminal Procedure and is based on the attached memorandum of points and authorities, the files and records in this case, and any additional evidence and argument that may be presented at or before the hearing on this Motion.

                                       Respectfully submitted,

                                       KAYE, McLANE & BEDNARSKI, LLP

DATED: December 18, 2000        By        /S/
                                              RONALD O. KAYE
                                              Attorneys for Curtis David Fahlberg

2

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## REQUEST FOR PARTICULARS

The defendant requests that the government specify the particular dates or at least substantially narrow the date range in which he is alleged to have: 1) traveled in foreign commerce; and 2) engaged in illicit sexual conduct with the three minor victims alleged in Counts 1, 2, and 3 of the Indictment, respectively. This Bill of Particulars is necessary because the Indictment is not specific enough to put the defendant on notice as to what travel in foreign commerce the grand jury alleged Mr. Fahlberg engaged in as it relates to the charges nor for him to develop an effective defense to the alleged illicit sexual conduct. This lack of specificity is exacerbated by Mr. Fahlberg's numerous travels and residency in Asia during the expansive 33 month time period currently alleged. Mr. Fahlberg should not be robbed of his ability to effectively challenge the jurisdictional element of travel in foreign commerce nor be forced at trial to essentially prove a negative as to illicit sexual conduct for the entire 33 month time period currently charged.

## II.

## THE ELEMENTS OF THE CHARGED OFFENSES

The elements the government must prove to establish illegal sexual conduct in foreign places under § 2423(c) are 1) the defendant must "travel[] in foreign commerce" and 2) the defendant must "engage[] in any illicit sexual conduct with another person" which in this case likely contemplates "any commercial sex act...with a person under 18 years of age."[1] *See*, 18 U.S.C. § 2423(c); U.S.C. § 2423(f)(2);

---

[1] 18 U.S.C. § 2423(f) states: "As used in this section, the term 'illicit sexual conduct' means (1) a sexual act (as defined in section 2246) with a person under 18 years of age that wold be in violation of chapter 109A if the sexual act

*United States v. Clark*, 435 F.3d 1100, 1114 (9th Cir. 2006)(setting forth the elements of 18 U.S.C. § 2423(c).

### III.
### THE LAW

Rule 7(f), Federal Rules of Criminal Procedure, expressly states that "[t]he court may direct the government to file a bill of particulars" and the Advisory Committed notes encouraged the courts to exercises their discretion in ruling on such a motion. Advisory Committee Notes, 1966 Amendment, Fed. R. Crim. P. 7(f) (West, 2006). The Court, in *King v. United States*, 402 F.2d 289 (10th Cir. 1968), stated that a Court's discretion:

> ". . . should be freely exercised with an awareness that an indictment may be sufficient on its face to state an offense, yet insufficient to adequately inform the accused of the charge against him to enable him to properly prepare his defense and, at least, to avoid prejudicial surprise."

*King*, supra, at 292. (Emphasis added.)

The opinion of Judge (later Supreme Court Justice) Whittaker, sets forth the proper purpose of a Bill of Particulars pursuant to Rule 7, Fed. R. Crim. P. :

> " '. . . [T]o furnish the defendant further information respecting the charge stated in the indictment when necessary to the preparation of his defense, and to avoid prejudicial surprise at the trial,' and when necessary for those purposes, is to be granted even though it requires 'the furnishing of information which in other circumstances would not be required because evidentiary in nature,' and accused is entitled to this 'as of right.' "

*United States v. Smith*, 16 F.R.D. 372, 374-375 (W.D. Mo. 1954).

The case of *United States v. Manetti*, 323 F.Supp. 683, 695-98 (D.C.Del. 1971) provides an in depth discussion of the law regarding a bill of particulars,

---

occurred in the special maritime and territorial jurisdiction of the United States; or (2) any commercial sex act (as defined in section 1591) with a person under 18 years of age." As the discovery reveals allegations that Mr. Fahlberg engaged in sexual activity in a brothel in Cambodia, it is likely that 18 U.S.C. § 2423(f)(2) will be relevant to this case.

2

explaining that the government need not give away its entire case, but "only of those central facts which will enable [the defendant] to conduct his own investigation of the transactions giving rise to the charge." The court holds that the defendants are not entitled to the name of every possible witness or "a precise statement of the factual background" of the alleged overt acts. *Id.* at 697. They are, however, entitled to information about the approximate date, time, and place of the central acts constituting the conspiracy and the identity of the individuals alleged to be involved in the conspiracy. *Id.* at 697-98.

## IV.
## ARGUMENT

Counts 1, 2 and 3, of the indictment all state "*Between on or about September 28, 2003, and on or about June 27, 2006*, defendant CURTIS DAVID FAHLBERG, a citizen of the United States, knowingly traveled in foreign commerce, from Los Angeles, California, in the Central District of California, to Cambodia, and engaged in illicit sexual conduct..." Indictment, CR 09-683. (Emphasis added.)

Here, Mr. Fahlberg makes a very limited request: for the dates of foreign travel and alleged illicit sexual contact to be stated precisely, or if that is not possible, to at least narrow the date range to less than the current 33 months. This request is crucial to an effective defense in this case because the dates involved go to the heart of litigating both elements of the offense charged.

### A. <u>Dates of Travel</u>

In the cases of *United States v. Clark*, 435 F.3d 1100 (9th Cir. 2006) and *United States v. Jackson*, 480 F.3d 1014 (9th Cir. 2007), the Ninth Circuit addresses the constitutionality of § 2423(c) in terms of its "travel" requirement. Both cases support the proposition that an individual can violate § 2423(c) by engaging in illicit

3

1  sexual conduct shortly after traveling to and arriving their destination. *Jackson*, 480
2  F.3d at 1100.  The question they left open, however, is when does the time gap
3  between travel and the sexual conduct become so attenuated that jurisdiction is no
4  longer proper?  In *Clark*, the court held "the lapse of time between his most recent
5  transit between the United States and Cambodia and his arrest was less than two
6  months. [Therefore] we see no plausible reading of that statute that would exclude its
7  application to Clark's conduct because of this limited gap."  *Clark*, 435 F.3d at 1107.
8  The court went to state, however, that "whether a longer gap between the travel and
9  the...act...would raise constitutional or other concerns is an issue we leave for another
10 day."  *Id.* at n.11.

11       In *Jackson*, the defendant was a United States citizen who permanently
12 relocated to Cambodia in 2001.  The court ultimately dismissed his case because it
13 ruled Jackson was not traveling in foreign commerce prior to the enactment of the
14 statute in 2003.  *Jackson*, 480 F.3d at 1024.  The court held that because 18 months
15 had passed since the defendant had begun residing in Cambodia, he had both "arrived"
16 and "resettled" in that county before § 2423(c) was enacted.  *See*, *Jackson*, 480 F.3d at
17 1017-18 n.6 ("Our resolution of this case also does not depend upon the length of time
18 between the end of travel and the sex act.  Instead, our focus is on the circumstance
19 that the two-year gap between Jackson's travel and his illegal sex acts straddled the
20 statute's enactment.  We therefore do not consider whether a two-year gap lacking that
21 characteristic would be a sufficiently "longer gap" to "raise constitutional or other
22 concerns.")

23       It is thus clear from *Clark* and *Jackson* that this Court must consider the gap
24 in time between when the government alleges Mr. Fahlberg traveled in Foreign
25 Commerce from the United States and when it alleges he engaged in illicit sexual
26 conduct in Cambodia.  In *Clark* and *Jackson*, however, the Court was able to
27 determine with precision how long the relevant gap in time was.  *See*, *Clark*, 435 F.3d
28 at 1103 ("Following a family visit in May 2003, Clark left Seattle and flew to

4

1  Cambodia via Japan, Thailand, and Malaysia...In late June 2003, the Cambodia police
2  arrested Clark."); *Jackson*, 480 F.3d at 1016 ("After their departure from the United
3  States, Jackson and Kleven traveled in Thailand for two months, eventually settling in
4  their new home in Cambodia in January 2002...Jackson admits that he met the young
5  Cambodian boy selling newspapers at a café in Phnom Penh on June 27, 2003 and
6  "asked [the boy] if he would sleep with him.")

7       In this case, the lack of specificity in the Indictment means that this Court
8  cannot measure with accuracy the relevant gap in time, and therefore Mr. Fahlberg
9  cannot argue specifically that it was unconstitutionally too attenuated.  The Indictment
10 states broadly that the foreign travel *and* the illicit sexual conduct occurred "between
11 on or about September 28, 2003 and June 27, 2006."  *Id.*  It never specifies when Mr.
12 Fahlberg actually left the United States during that period nor how much time passed
13 before the alleged conduct at issue.

14      Moreover, the discovery provided by the government fails to illuminate the
15 issue.  According to search of Treasury Enforcement Communication System (TECS)
16 conducted in July 2006, Mr. Fahlberg engaged in the following travel in foreign
17 commerce from the United States during the period alleged:

18      •    9/28/2003 - Flight from Los Angeles International Airport (LAX) to
19           Hong Kong International Airport (HKG)[2] returning to the United States
20           4/20/2004
21      •    9/24/2004 - Flight from Los Angeles International Airport (LAX) to
22           Hong Kong International Airport (HKG) returning to the United States
23           5/26/2005
24      •    10/11/2005 - Flight from Los Angeles International Airport (LAX) to

---

[2] Further demonstrating that the broad date range provided in the Indictment is not tied to any specific instances of foreign travel nor illicit sexual conduct, it appears that 9/28/2003 was simply the first foreign travel Mr. Fahlberg engaged in from the United States after the effective date of the 18 U.S.C. § 2423(c)(April 30, 2003) and that 6/27/2006 is simply the day his computer was searched and seized at LAX initiating the instant investigation.

      Hong Kong International Airport (HGKG) returning to the United
      States 6/26/2006

*See*, Treasury Enforcement Communication System (TECS), attached as Exhibit A.

   Additionally, the government's review of Mr. Fahlberg's foreign travel immigration stamps reveal the following entry Visas for the Kingdom of Cambodia:

- Issue Date 12/03/05 - Expiry Date 1/03/06
- Issue Date 2/16/06 - Expiry Date 3/16/06
- Issue Date 5/18/06 - Expiry Date 6/18/06

*See*, Report of Investigation, attached as Exhibit B.

   Thus, it is clear that the government has provided no customs information evidencing Mr. Fahlberg's contact with Cambodia following his travel from the United States in either 2003 or 2004. Thus, any alleged illicit sexual conduct in Cambodia during that period could have occurred almost 8 months after Mr. Fahlberg left the United States, in either 2003 or 2004. Even after 2005, where the government is able to provide Cambodian visa stamps, any alleged sexual conduct could have occurred approximately 2, 4, or 8 months after he left the United States in 2005. The fact of the matter is that the defendant and this Court cannot know with any certainty when the relevant time periods are which significantly inhibits his ability to appropriately challenge the constitutionality of his prosecution in this case.

**B.**  **Dates of Alleged Illicit Sexual Conduct**

   Just as the lack of specificity as to the date of the travel element make a constitutional challenge difficult, the same applies equally to providing a traditional defense at trial given the lack of notice provided on the illicit sexual conduct element. Given Mr. Fahlberg's extensive travel to Cambodia (including 3 trips in just a 6 month period identified above), which presumably included numerous legal sexual encounters for which the government is not seeking prosecution, it will be impossible to prepare a defense for the entire 33 month period currently alleged. To do so is to

6

ask the defense to prepare a massive alibi analysis in hopes of somehow correctly identifying what the government may ultimately state is the correct date of illicit sexual conduct. *See*, *U.S. v. Dolan*, 113 F.Supp. 757, 759 (D.C.Conn. 1953)(A bill of particulars may be invoked to save a defendant wholly needless labor in preparing his defense.)

Here again, the discovery provides does little to remedy the situation. None of the alleged victims can specifically identify when the alleged illicit sexual acts occurred.

At the most basic level, the lack of specificity in the Indictment will obviously prejudice Mr. Fahlberg's ability to offer a putative alibi defense. As the Indictment currently stands, Mr. Fahlberg will essentially have to develop an alibi and appropriate witnesses for each of the approximately 1000 days his illegal conduct is alleged to have spanned.[3] More specifically, the defense may choose to offer evidence that the Svay Pak area of Cambodia was shut down all together at various points from 2003-2006. *See,* Cambodia Shuts Down Red Light District, attached as Exhibit C. Without more specificity in the indictment, the defense will be unable to determine which dates of closure would even be relevant to the charges against him.

Given that there are 3 distinct alleged victims in this case, the government should not be permitted to use the same boilerplate date range for each. For example, in *United States v. Walsh*, 194 F.3d 37 (2d Cir.1999), a corrections officer, was charged with cruel and unusual punishment (of a sexual variety) against an adult inmate. The indictment alleged three distinct assaults which took place within the following date ranges: Count One-between January 4 and March 8, 1991; Count Two-between May 26 and December 1, 1992; and Count Three-between May 26 and

---

[3] In the event the Court does not grant the instant Motion for a Bill of Particulars, the defendants respectfully requests, out of fundamental fairness, that it at least waive the alibi notice requirements in Federal Rule of Criminal Procedure 12.1 or at a minimum, allow the defendant to respond to any such request by the government with the same level of specificity the Government used in the Indictment.

7

July 22, 1992. *Id.* At 44. This level of specificity, at a minimum, is appropriate here.

While the defense understands that in the case of alleged minor victims, an understandable amount of leeway much be given in terms of faded/compromised memories of specific dates and times. The 33 month span in this case is simply too long, unnecessary, prejudicial, and longer than most accepted by other courts. *See*, *Edwards v. Mazzuca*, 2007 WL 2994449, (S.D.N.Y. 2007) at *5 & 8 (finding allegations of abuse of minor over a period of seven months sufficient); *see also Valentine v. Konteh*, 395 F.3d 626, 631-33 (6th Cir. 2005)(finding allegations of abuse of eight-year-old over eleven months sufficient); *see United States v. Agard*, 531 F.Supp.2d 1072, 1074 (D.N.D.2008) (permitting allegations of five separate incidents of abuse, each occurring within thirteen month span); *United States v. Jourdain*, No. 05-CR-439, 2006 WL 737087, at *2 (D.Minn. Mar. 20, 2006) (permitting allegation of one incident of abuse occurring within a specified month); *United States v. Hawpetoss*, No. 05-CV-4, 2005 WL 1489963, at *5 (E.D. Wis. June 23, 2005) (permitting allegations of several counts of abuse, ranging in time from approximately four months (seasonal) to ten months); *United States v. Hayes*, No. 07-CR-293, 2007 WL 3085998, at *2 (M.D.Pa. Oct. 19, 2007) (denying motion for bill of particulars for an indictment under Section 2423(a) alleging one act of interstate transport of a minor for prostitution within a given month).

Finally, as demonstrated above, the defense's request here for identification of specific dates or at least a reasonable date range should not be characterized as a discovery issue. The government may claim that it has satisfied its duty by providing voluminous discovery. While that might be true, it does not satisfy the inquiry. The discovery does not supply this information to the defendant with definite and reasonable notice. The defendant should not have to guess from the discovery which trip to Cambodia allegedly led to the conduct charged. Greater specificity will permit the defendant to prepare his defense without unfair surprise at trial.

The absence of specificity affects all parts of this trial. Without the

information requested, the defendant still cannot know with certainty even which of the numerous trips he made to Cambodia the government is alleging resulted in "illicit sexual conduct." Without this information, the defendant cannot entirely plan objections, *in limine* motions, trial strategy, opening statement, cross-examination, or closing argument.

In short, identifying the specific dates or even a more reasonable range of dates charged in the Indictment will make clear to all parties and the Court both the travel and illicit sexual conduct elements of the Counts charged.

## V.
## CONCLUSION

For the foregoing reasons Mr. Fahlberg requests that the government provide a bill of particulars specifying precisely or significantly narrowing the date range in which: 1) he is alleged to have traveled in foreign commerce; and 2) engaged in illegal sexual conduct in violation of Title 18 U.S.C. § 2423(c).

Respectfully submitted,

KAYE, McLANE & BEDNARSKI, LLP

DATED: December 18, 2009        By_____/S/_____
                                RONALD O. KAYE
                                Attorneys for Curtis David Fahlberg

9