RONALD O. KAYE (No. 145051)
KAYE, McLANE & BEDNARSKI, LLP
234 E. Colorado Blvd.  Suite 230
Pasadena, California 91101
Telephone: (626) 844-7660
Facsimile: (626) 844-7670
rok@kmbllp.com

Attorneys for Defendant
CURTIS DAVID FAHLBERG

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CASE NO. 09-00683-MMM |
| Plaintiff, ) | MEMORANDUM OF POINTS AND AUTHORITIES RE: THE CONSTITUTIONALITY OF 18 U.S.C. § 2423(c) |
| v. ) | |
| CURTIS DAVID FAHLBERG, ) | |
| Defendant. ) | Hearing Date:  N/A |
| ————————————————) | Hearing Time:  N/A |

TO: ACTING UNITED STATES ATTORNEY GEORGE S. CARDONA, AND

ASSISTANT UNITED STATES ATTORNEY ROBERT DUGDALE:

The Defendant, Curtis David Fahlberg, through his attorney, Ronald Kaye,

hereby submits the following Memorandum of Points and Authorities in response to

the Court's inquiry: 1) Whether a lapse of time between travel from the United States

and illicit sexual conduct can be so great that prosecution for the illegal sexual

conduct would be unconstitutional or otherwise illegal; and 2) whether on the facts of

\\

\\

\\

this case, 8.5 months constitutes such a lapse of time that prosecuting defendant is unconstitutional or otherwise illegal.

Respectfully submitted,

KAYE, McLANE & BEDNARSKI, LLP

DATED: February 3, 2010            By_____/S/_____
                                        RONALD O. KAYE
                                        Attorneys for Curtis David Fahlberg

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES CITED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . 1

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

A.    When The Nexus Between the Alleged Acts and Foreign
Commerce Become Too Attenuated Jurisdiction is Not Proper
Under § 2423(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

1.    *Clark* and *Jackson*:  The Meaning of Time, Travel, and
Foreign Commerce . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

a.    Time Span and Intent . . . . . . . . . . . . . . . . . . . . . 3

b.    Travel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

c.    Nexus to Foreign Commerce . . . . . . . . . . . . . . 5

2.    A Constitutionally Tenable Connection to Foreign
Commerce No Longer Exists In This Case When As
Much as 8.5 Months May Separate Completed Travel
and Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

3.    Principles of Statutory Construction Requires That the
Prohibited Conduct in § 2423(c) Occur Soon After the
Travel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

III.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

i

# <u>TABLE OF AUTHORITIES</u>

## FEDERAL CASES

*City of Milwaukee v. Illinois and Michigan*, 451 U.S. 304 (1981) ............. 11

*Consumer Prod. Safety Commission v. GTE Sylvania, Inc.*,
    447 U.S. 102 (1980) .............................................................. 10

*Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241 (1964) ............ 5

*Hotel v. Virginia Surface Mining & Reclamation Association, Inc.*,
    452 U.S. 264 (1981) ................................................................. 5

*Japan Line, Ltd. v. Los Angeles County*, 441 U.S. 434 (1979) ................ 5, 6

*Jones v. United States*, 529 U.S. 848 (2000) ............................................. 10

*National League of Cities v. Usery*, 426 U.S. 833 (1976) ............................ 5

*Perrin v. United States*, 444 U.S. 37 (1979) .............................................. 10

*Pioneer Insurance Services Co. v. Brunswick Associates Ltd. Partnership*,
    507 U.S. 380 (1993) ................................................................. 10

*United States v. Cabaccang*, 332 F.3d 622 (9th Cir. 2003) ........................ 11

*United States v. Clark*, 435 F.3d 1100 (9th Cir. 2006) ........................ *passim*

*United States v. Cores*, 356 U.S. 405 (1958) .............................................. 12

*United States v. Corey*, 232 F.3d 1166 (9th Cir. 2000) .............................. 11

*United States v. Cummings*, 281 F.3d 1046 (9th Cir. 2002) ........................ 7

*United States v. Custis*, 511 U.S. 485 (1994) ............................................ 11

*United States v. Delaware & Hudson Co.*, 213 U.S. 366 (1909) .............. 10

*United States v. Hackett*, 311 F.3d 989 (9th Cir. 2002) ............................ 10

*United States v. Jackson*, 480 F.3d 1014 (9th Cir. 2007) .................... *passim*

*United States v. Lopez*, 514 U.S. 549 (1995) ........................................... 5, 6

*United States v. Morales*, 11 F.3d 915 (9th Cir. 1993) .............................. 11

*United States v. Rincon-Jimenez*, 595 F.2d 1192 (9th Cir.1979) .............. 12

*United States v. Toussie*, 397 U.S. 112 (1970) .......................................... 11

# TABLE OF AUTHORITIES (CONT.)

## FEDERAL STATUTES

18 U.S.C. § 157(3) ........................................................................ 11

18 U.S.C. § 207(f)(2) .................................................................... 11

18 U.S.C. § 551 ............................................................................ 11

18 U.S.C. § 922(k) ........................................................................ 11

18 U.S.C. § 1202(a) ...................................................................... 11

18 U.S.C. § 2423(c) ............................................................. *passim*

## LAW REVIEWS AND TREATISES

J. Buffington, *Taking the Ball and Running with It: U.S. Clark and Congress's u*nlimited Powers under the Foreign Commerce Clause,
    75 U. Cinn. L.Rev. 841 (Winter 2006) ............................... 7

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

The government has charged Mr. Fahlberg in the Central District of California with acts alleged to have occurred in Cambodia while he resided in Thailand.  The charging statute, 18 U.S.C. § 2423(c), was enacted in 2003 and grants United States district courts extraterritorial jurisdiction over American citizens who "travel" abroad and engage in illicit sexual conduct with minors.  The few appellate cases addressing the constitutionality of this far reaching statute have upheld it on Foreign Commerce Clause grounds.  The rationale in support of these decisions rests on an expansive and perhaps metaphysical definition of the meaning of "travel" and its tenuous connection to "foreign commerce."

The fundamental question, identified by the Court,  that remains unanswered by these cases is at what point does the temporal nexus between "travel" and "act" become so attenuated that jurisdiction is no longer proper?  In Mr. Fahlberg's case, as much as 8.5 months may have elapsed between the completion of his last "travel" and the time the acts are alleged to have occurred.  Mr. Fahlberg contends that such a span of time between travel and act makes jurisdiction under § 2423(c) improper because: (1) the alleged conduct had no rational connection to foreign commerce; and (2) even if there arguably could be a sufficient connection, the statute requires a closer temporal connection between travel and act than 8.5 months.

Mr. Fahlberg understands that the purpose of the Court's inquiry regarding the potential 8.5 month span between travel and act in this case is to determine the necessity for the requested Bill of Particulars.  If, however, the Court should consider ruling as a matter of law that the 8.5 month time span in and of itself is insufficient attenuation to undermine jurisdiction, and thereby determine that no Bill of

1

Particulars is required, Mr. Fahlberg respectfully argues that such a ruling is premature with respect to a subsequent substantive Motion to Dismiss on the issue of jurisdiction, and requests that the Court permit Mr. Fahlberg to present further evidence in order for the Court to more comprehensively assess the jurisdictional issue.

Specifically, Mr. Fahlberg should be permitted to file a subsequent substantive Motion to Dismiss supplementing his arguments presented herein regarding attenuation of dates of travel with significant facts establishing Mr. Fahlberg's complete transfer of residency to the Kingdom of Thailand, and his distant relationship with the United States – making any connection to foreign commerce even more attenuated. While these other factors do not go to the inquiry required by the Court for instant Motion for Bill of Particulars, they are relevant to a substantive Motion to Dismiss and should properly be considered at that time.[1]

## II.

## ARGUMENT

**A.**   **When The Nexus Between the Alleged Acts and Foreign Commerce Become Too Attenuated Jurisdiction is Not Proper Under § 2423(c).**

**1.**   ***Clark* and *Jackson*:  The Meaning of Time, Travel, and Foreign Commerce.**

In *Clark* and *Jackson,* the Ninth Circuit addressed the constitutionality of §

___

[1]    These other factors, relevant under *United States v. Jackson*, 480 F.3d 1014 (9th Cir. 2007) to demonstrate Mr. Fahlberg "resettled" abroad, include that prior to the sexual acts alleged in this case: Mr. Fahlberg's travel from the United States always terminated in Thailand where he would then get a separate and independent ticket on a non-US carrier to travel to Cambodia; he was a permanent resident of Thailand; he stopped paying State income tax; he opened a bank account 8 years ago in Thailand; he has a Thai driver's license but no U.S. driver's license; he sold his home in North Carolina; he planned to be cremated in Thailand upon his death; he has consistently leased a condominium in Thailand; and he would only begrudgingly return to the United States out of necessity to check on his parents' home in Mississippi during hurricane season.

2423(c).  *United States v. Clark*, 435 F.3d 1100 (9th Cir. 2006), and *United States v. Jackson,* 480 F.3d 1014 (9th Cir. 2007).  In *Clark,* the Ninth Circuit found that extraterritorial jurisdiction under § 2423(c) was proper under Congress' Foreign Commerce Clause power.  The Court analyzed the history of § 2423(c) and ruled that the statute only required the government prove two elements:  (1) travel in foreign commerce; and (2) illicit sexual conduct.  *Clark,* 435 F.3d at 1105.  The Court also found that § 2423(c) did not require the government establish that the illicit conduct occurred *while* a defendant was traveling.  *Id.* at 1107.

### a.   Time Span and Intent

Consistent with the legislative history of § 2423(c), *Clark* made it clear that a defendant need not form an intent to engage in illicit conduct at the time of his travel in order to be guilty under § 2423(c).  *Id.*  In other words, an individual can violate § 2423(c) by engaging in illicit sex *shortly after* traveling to and arriving at his destination.  *Jackson*, 480 F.3d at 1100.  As the legislative history suggested, the goal was to relieve the government of the perhaps difficult burden of proving a defendant's state of mind while in route to a particular destination.  But, by divorcing intent from travel in its reading of the statute, the Ninth Circuit raised several unanswered questions:  (1) when does the time gap between travel and act become so attenuated that jurisdiction is no longer proper? and (2) what is the meaning of "travel" and does it ever end?

In addressing the first issue, the Court reasoned in *Clark,* that "the lapse of time between his most recent transit between the United States and Cambodia and his arrest was less than two months.   [Therefore] we see no plausible reading of the statute that would exclude its application to Clark's conduct because of this limited gap."  *Clark,* 435 F.3d at 1107.  Thus, it was Clark's engagement in an illicit sex act *shortly after* his arrival Cambodia that made jurisdiction proper in that case.  *Id.* at 1116.  However, in an important footnote, the court opined "whether a longer gap

1    between the travel and the . . . act . . .. would raise constitutional or other concerns is

2    an issue we leave for another day." *Id.* at n.11.

3

4              b.    Travel

5              The issue in *Jackson* was whether a United States citizen who permanently

6    relocated to Cambodia in 2001 and never returned to the United States was subject to

7    prosecution under § 2423(c) for acts committed in Cambodia.   The Court ultimately

8    ruled that Jackson's conduct was not proscribed by § 2423(c) because Jackson was no

9    longer "traveling in foreign commerce" prior to the enactment of the statute in 2003.

10   *Jackson,* 480 F.3d at 1024.   In reaching its conclusion, the Court attempted to provide

11   a clearer definition of what it means to "travel in foreign commerce."

12             Ultimately, the Court rejected the government's "limitless interpretation of

13   travel" and ruled that "travel can end for a United States citizen at *some* point while

14   still abroad." *Id.* at 1022.   The *Jackson* court proposed two equally viable definitions

15   of travel:  (1) a common sense definition of travel that "ends upon arrival" in a

16   foreign land but contemplates a "future . . . return" to ones home country (visitors); or

17   (2) travel that ends upon permanent resettlement in a foreign country, which

18   contemplates a permanent intent to remain (residents or domiciliaries). *Id.*   Under

19   both definitions, the *Jackson* Court found that since 18 months had passed since the

20   defendant had begun residing in Cambodia, and he had both "arrived" and "resettled"

21   in that country before § 2423(c) was enacted.

22             The *Jackson* opinion did not address the jurisdictional question left open by

23   *Clark* – whether the passage of more than two months between travel and act

24   attenuates foreign commerce clause jurisdiction. *See Jackson*, 480 F.3d at 1017-18

25   n.6 ("Our resolution of this case also does not depend upon the length of time

26   between the end of travel and the sex act. Instead, our focus is on the circumstance

27   that the two-year gap between Jackson's travel and his illicit sex acts straddled the

28   statute's enactment.  We therefore do not consider whether a two-year gap lacking that

1  characteristic would be a sufficiently "longer gap" to "raise constitutional or other

2  concerns.")

3

4            c.        Nexus to Foreign Commerce

5        Authority for the exercise of the far reaching extraterritorial jurisdiction found

6  in § 2423(c) is derived from Congress's *foreign* commerce clause power which grants

7  Congress power "to regulate Commerce with foreign Nations, and among the several

8  States, and with the Indian Tribes."  Because Congress' power to regulate interstate

9  commerce may be restricted by considerations of federalism and state sovereignty,

10 which do not impact its authority under the Foreign Commerce Clause, Congress'

11 power to regulate under the Foreign Commerce Clause  has been described as broader

12 than its authority to regulate interstate commerce.  *Nat'l League of Cities v. Usery*,

13 426 U.S. 833 (1976); *see also Japan Line, Ltd. v. Los Angeles County*, 441 U.S. 434,

14 448-450 (1979) (in international relations and with respect to foreign intercourse and

15 trade the people of the United States act through a single government with unified and

16 adequate national power).

17       Yet, because this is a criminal case and not a commercial trade or foreign

18 relations case the question presented here is whether Congress has the power to

19 regulate the prohibited criminal activity – lawful travel using a channel of foreign

20 commerce, and engaging in sex with a minor as much as 8.5 months after the lawful

21 travel has ceased.   Whether a regulated activity falls within Congress' constitutional

22 power under the Commerce Clause is "ultimately a judicial rather than a legislative

23 question[.]"  *Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 273 (1964)

24 (Black, J., concurring); *see also Hotel v. Virginia Surface Mining & Reclamation

25 Assn., Inc.*, 452 U.S. 264, 276-280 (1981) ("[S]imply because Congress may conclude

26 that a particular activity substantially affects interstate commerce does not necessarily

27 make it so") (Rehnquist, J., concurring in judgment); *see also United States v. Lopez*,

28 514 U.S. 549, 555 (1995) (Court must undertake task of determining whether a

rational basis existed for concluding that a regulated activity sufficiently affected interstate [or foreign commerce]).

While Mr. Fahlberg concedes the Supreme Court has determined that Congress has broader power under the Foreign Commerce Clause than under the interstate Commerce Clause, that distinction was based primarily on the need for Congress to speak with a unified voice in the area of foreign trade and taxation. *See*, *Japan Line,* 441 U.S. at 448 (In international relations and with respect to foreign commerce and trade the people of the United States act through a single government with unified and adequate national power.). Matters of tax and foreign trade directly affect the United State's relationship with other countries. Here, the statute at issue in this case does not implicate the same interests.

It makes sense for Congress to have broad power to regulate foreign trade and the taxation of instrumentalities of foreign commerce because of the importance of international relations. It is not as important for Congress to act in a unified manner in regulating illicit sex acts of a U.S. citizen abroad because this conduct can be regulated by each individual state or by the foreign nation in which the crime occurs. As a single United States citizen's conduct in a foreign nation does not give rise to the same foreign relations concerns that the Supreme Court articulated in *Japan Line,* Congress should not have broader power to enact the statute at issue under the guise of the Foreign Commerce Clause than it has in regulating the citizen's interstate conduct.

Traditionally, the Supreme Court has identified three categories of activity that Congress may regulate under its commerce power: (1) the use of the *channels* of commerce, (2) the regulation and protection of the *instrumentalities* of commerce, and (3) activities having a *substantial relation* to interstate commerce. *Lopez*, 514 U.S. at 557. Thus, under *Lopez*, the statute must fall into one of the three delineated "categories" of activity that Congress may regulate under its commerce power to be constitutional. *Id.* at 558. Although *Lopez* was an interstate commerce case, its

6

1    analysis applies equally to a foreign commerce challenge. *See United States v.*

2    *Cummings*, 281 F.3d 1046, 1049 n.1 (9th Cir. 2002) (recognizing that *Lopez* was

3    interstate commerce case, and applying *Lopez's* analytical framework to foreign

4    commerce clause).

5        In *Clark,* the Ninth Circuit rejected the traditional commerce clause framework

6    and created a new test that found jurisdiction proper so long as there was a

7    "constitutionally tenable nexus with foreign commerce" and the regulated conduct

8    was rationally related to Congress' authority under the Foreign Commerce Clause.

9    *Clark*, 435 F3d at 1115.   The Court reasoned that because Clark traveled in foreign

10    commerce and engaged in conduct that was "economic" in character, jurisdiction was

11    proper, even though § 2423 was a criminal statute.  *Id*.[2]

12        Judge Ferguson in his dissent urged the majority to adopt the more traditional

13    *Lopez* and *Morrison* framework adopted in interstate commerce cases.  Judge

14    Ferguson reasoned that § 2423(c) lacks any tangible links to the channels of

15    commerce that would justify upholding it under Congress's Foreign Commerce

16    power. *Id*. at 1118.  "This cannot mean that every act with a bare economic

17    component that occurs downstream from that travel is subject to regulation by the

18    United States under its Foreign Commerce power, or the Commerce Clause will have

19    been converted into a general grant of police power." *Id.*  Such a broad grant of

20    jurisdictional authority was troubling, because, as Judge Ferguson predicted, the only

21    U.S. citizen who could fall outside the reach of § 2423(c) would be a citizen by virtue

22    of birth who "never set foot in the United States." *Id.* at 1120.  Judge Ferguson also

23

24

_____

[2]*Clark's* abandonment of the traditional *Lopez* analysis has been criticized
25   because *Lopez* provides the only guidepost a court currently has to measure whether
Congress is exceeding its power under the Foreign Commerce Clause and gives
26   Congress almost unlimited power. *See, e.g.* J. Buffington, *Taking the Ball and*
*Running with It: U.S. v. Clark and Congress' unlimited Powers under the Foreign*
27   *Commerce Clause*, 75 U. Cinn. L.Rev. 841, 856-62 (Winter 2006)(Noting that *Clark*
was the first time a court did not use the *Lopez* test to determine whether Congress
28   overstepped its bounds under its foreign commerce power when it enacted a statute
that regulated the conduct of U.S. citizens or aliens abroad).

1   pointed out that the purpose of § 2423(c) was to regulate criminal conduct and

2   although the proscribed conduct may contain an economic or commercial component,

3   there was no "tenable link to commerce with *foreign nations*" to justify regulation

4   under the Foreign Commerce Clause.  *Id. (emphasis added).*   Finally, he stressed that

5   any unlawful conduct at issue would not go unpunished, as any defendant would

6   remain subject to prosecution in Cambodia, where the unlawful conduct had occurred.

7   *Id.*

8           While Judge Ferguson's dissent did not carry the day in *Clark* where there was

9   only a 2 month gap between travel and act, its cogent and persuasive derision of §

10  2423's flaws should be followed in this case where the gap of 8.5 months is even more

11  attenuated.  To find otherwise, would be to hold as, Judge Ferguson observed, that the

12  purchase of a lunch in Paris by an American citizen who traveled there by plane

13  would constitute an act of foreign commerce, therefore theoretically subject to

14  Congressional regulation.  *Id.*  To extend this analogy in a criminal context, the same

15  logic would arguably bring the purchase of a small amount of marijuana by an

16  American student in Amsterdam within the scope of permissible legislation, also

17  under the "foreign commerce" power.  This is an extremely broad, and in the

18  defendant's view, unconstitutional regulation of the activities of our citizens.  Thus,

19  some level of attenuation and / or a *de minimus* connection to foreign commerce –

20  perhaps because the individual has permanently relocated away from the United

21  States – should be a basis to undermine federal jurisdiction.

22

23          **2.      A Constitutionally Tenable Connection to Foreign Commerce No**

24                  **Longer Exists In This Case When As Much as 8.5 Months May**

25                  **Separate Completed Travel and Act.**

26          The issue left unanswered in *Clark,* "whether a longer gap between the travel

27  and the . . . act . . . . would raise constitutional or other concerns . . .", is squarely

28  raised in Mr. Fahlberg's case.  Here, the alleged conduct occurred as much as 8.5

8

months after Mr. Fahlberg's interaction with the proverbial stream of foreign commerce.  It is fair to say that under the most recent definitions provided by the Ninth Circuit, Mr. Fahlberg was no longer "traveling" at the time the alleged acts occurred.  Rather, he was a resident of Thailand who had demonstrated a "permanent intent to resettle" in that country well before the time of the alleged acts in Cambodia.

With a childhood spent as an "army brat," Mr. Fahlberg moved around a great deal, and in Thailand has finally found a place to permanently call home.  He became a permanent resident there, leased a condominium, was voraciously learning the language, and considered it home in every sense of the word.  All of these factors demonstrated his intent to "reside" permanently in Thailand.

He would only briefly return to the United States during hurricane season to check his family home in Mississippi.  After Katrina destroyed this last remaining connection to the United States he intended to close all his bank accounts and collect his few remaining possessions.  These brief trips were his last contact with the stream of foreign commerce.   The alleged acts could have occurred more than 8.5 months later.

Thus, it cannot be said that Mr. Fahlberg's connection to foreign commerce is "constitutionally tenable" to justify jurisdiction under § 2423(c).  The lapse of time is far greater than the two months in *Clark* and calls into question the reasonableness of the application of § 2423(c) in this case.  Even under the expansive test adopted by the majority in *Clark*, it cannot be said that conduct attributed to Mr. Fahlberg 8.5 months after his last "travel" has any tenable connection to foreign commerce to make jurisdiction in this case a rational exercise of Congress's power under the Foreign Commerce Clause.   This is particularly true where Mr. Fahlberg has all but formally abandoned his citizenship and residency in the United States.

\\

\\

\\

**3.**     **Principles of Statutory Construction Requires That the Prohibited Conduct in § 2423(c) Occur Soon After the Travel.**

Even assuming Congress had authority under the Foreign Commerce Clause to enact this statute, several important fundamental maxims of statutory construction are relevant in construing § 2423(c).  First, "'where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by other of which such questions are avoided, [the Court's] duty is to adopt the latter." *United States v. Delaware & Hudson Co.*, 213 U.S. 366, 408 (1909); *see also Jones v. United States*, 529 U.S. 848, 857 (2000).  Second, "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity."  *Jones*, 529 U.S. at 858.  Third, "the starting point for interpreting a statute is the language of the statute itself." *United States v. Hackett*, 311 F.3d 989, 991 (9th Cir. 2002) (quoting *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980)).  Fourth, with regard to the meaning of the words used, they "are to be construed according to 'their ordinary, contemporary, common meaning[s].'"  *Hackett*, 311 F.3d at 992 (*quoting Pioneer Ins. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388 (1993), and *Perrin v. United States*, 444 U.S. 37, 42 (1979)).

These important principles of statutory construction support the defense position that § 2423(c) does not apply when 8.5 months separate the alleged acts from the completed travel.  A plain reading of the statute requires a closer temporal nexus between completed "travel" and "act."  In plain terms, § 2423(c) punishes, "[a]ny United States citizen or alien admitted for permanent residence who travels in foreign commerce, ***and*** engages in any illicit sexual conduct . . ."  18 U.S.C. § 2423(c) (emphasis added).

The conjunctive use of  "and" in the statute by definition creates a limited temporal connection between travel and act.  This is because one ordinary meaning of the word "*and*" is "*then.*"  *Webster's Encyclopedic Unabridged Dictionary of the English Language* (1996 ed.) at 77.  The ordinary meaning of the word *"then"* is

10

1    "*immediately soon afterward*" or "*next in order of time*." *Id.* at 1967.

2         Such a reading of the statute is necessary in order to reasonably limit the scope

3    of prohibited conduct.  Without a limited or temporal nexus between travel and act, §

4    2423(c) would have almost infinite reach and apply to conduct that occurred years

5    after an American traveled or resettled abroad.

6         Had Congress so intended, it certainly had the linguistic tools available to craft

7    a statute that was broad in scope and time.  *United States v. Custis*, 511 U.S. 485

8    (1994); *City of Milwaukee v. Illinois and Michigan*, 451 U.S. 304 (1981); *United*

9    *States v. Cabaccang*, 332 F.3d 622 (9th Cir. 2003); *United States v. Corey*, 232 F.3d

10   1166 (9th Cir. 2000)(supporting the proposition that Congress knows how to draft a

11   statute consistent with its intent when it so desires).

12        For example, if Congress had intended to create a statute that was far reaching

13   in scope and time, it would have used the clause "at any time" in place of the

14   conjunctive "and" in the statute.  Thus, § 2423(c) would punish persons who travel

15   "and at any time thereafter" engage in illicit sexual conduct.  There are numerous

16   examples of statutes that contain such "at any time language."  *See, e.g.,* 18 U.S.C. §

17   157(3), 18 U.S.C. § 207(f)(2), 18 U.S.C. § 551, 18 U.S.C. § 922(k), 18 U.S.C. §

18   1202(a).

19        A similar analogy can be made to the doctrine of continuing offenses that also

20   requires explicit use of statutory terms of art in order to create offenses that are not

21   bound by time.  "A continuing offense . . . is an unlawful course of conduct that does

22   perdure ..." *United States v. Morales,* 11 F.3d 915 (9th Cir. 1993).  In such cases,

23   explicit language is required to make an offense a continuing one.  An offense should

24   not be deemed continuous "unless the explicit language of the substantive criminal

25   statute compels such a conclusion, or the nature of the crime involved is such that

26   Congress must assuredly have intended that it be treated as a continuing one." *Id.*

27        Section 2423(c) is not a statute whose language "clearly contemplates a

28   prolonged course of conduct." *United States v. Toussie*, 397 U.S. 112,120 (1970).

11

Examples in this category include statutes that punish: a foreign seaman who unlawfully "remains" in the United States, *see United States v. Cores*, 356 U.S. 405, 408 (1958) ( "the crucial word 'remains' permits no connotation other than continuing presence"); and a deported alien who "is at *any time found in*" this country, *see United States v. Rincon-Jimenez*, 595 F.2d 1192, 1194 (9th Cir.1979) ("This language explicitly makes it a crime for an alien to remain in this country after an illegal entry.") (emphasis added).

By contrast to the above examples, the language of § 2423(c) contains no express or explicit language that demonstrates a congressional intent to create a statute to punish acts occurring "any time" after completed travel. This is not a statute in which Congress has expressly commanded that the offense be deemed to continue in time. Here, construing the statute to reach Mr. Fahlberg whose alleged conduct occurred as much as 8.5 months after his return to Thailand, creates serious constitutional doubt under existing Supreme Court precedent as well as violates the rule of lenity.

To avoid the serious constitutional problems the statute should be read to contain some temporal nexus between travel and act. The statute should be narrowly applied to individuals who engage in illicit sexual conduct relatively soon after travel ends, rather than individuals, such as Mr. Fahlberg, who have demonstrated an intent to permanently resettle abroad with no immediate plans to return permanently to the United States. Therefore, the 8.5 month time span could, in fact, be far too attenuated for triggering foreign jurisdiction.

### III.

### CONCLUSION

In Mr. Fahlberg's case, as much as 8.5 months elapsed between the completion of his last "travel" and the time the acts are alleged to have occurred. Mr. Fahlberg contends that such a span of time between travel and act makes jurisdiction under §

1  2423(c) improper because the alleged conduct had no rational connection to foreign

2  commerce.   Morever, fundamental principles of statutory construction require the

3  statute to contain a reasonable time limit between travel and act.

4          As Mr. Fahlberg has demonstrated to the Court that the 8.5 month gap is highly

5  relevant to his Motion to Dismiss, this Court should grant the previously filed Motion

6  for Bill of Particulars.

7

8

9                                          Respectfully submitted,

10                                          KAYE, McLANE & BEDNARSKI, LLP

11

12  DATED: February 3, 2010          By_____/S/_____
                                          RONALD O. KAYE
13                                          Attorneys for Curtis David Fahlberg

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

13