RONALD O. KAYE (No. 145051)
KEVIN J. LaHUE (No. 237556)
KAYE, McLANE & BEDNARSKI, LLP
234 E. Colorado Blvd.  Suite 230
Pasadena, California 91101
Telephone: (626) 844-7660
Facsimile: (626) 844-7670
rok@kmbllp.com

Attorneys for Defendant
CURTIS DAVID FAHLBERG

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CURTIS DAVID FAHLBERG,<br><br>Defendant. | CASE NO. 09-00683-MMM<br><br>SUPPLEMENTAL BRIEFING BY DEFENDANT REGARDING EVIDENCE GATHERED IN CAMBODIA IN SUPPORT OF MOTION TO SUPPRESS IDENTIFICATION TESTIMONY OF L.T.K.G., D.T.M.V., AND D.T.M.T.<br><br>Hearing Date:   September 20, 2010<br>Hearing Time:  1:15 p.m.<br>Court: Hon. Margaret M. Morrow |

Defendant Curtis David Fahlberg, by and through his counsel of record, Ronald Kaye, respectfully submits this Supplemental Briefing Regarding Evidence Gathered in Cambodia in Support of Defendant's Motion to Suppress Victim Identification Testimony.

\\

\\

\\

\\

1      This Supplemental Briefing is based upon the attached Memorandum of Points

2   and Authorities, the attached declaration of counsel, all files and records in this case, and

3   any further evidence that may be adduced at the hearing on this motion.

4

5                                      Respectfully submitted,

6

7                                      KAYE, McLANE & BEDNARSKI, LLP

8

9   DATED: August 2, 2010              By_____/S/_____

10                                          RONALD O. KAYE
                                           Attorneys for Curtis David Fahlberg

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                        2

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

3

## I.

4

## INTRODUCTION

5       On June 2, 2010, the Court ordered the parties to file a report "setting forth

6   their view as to whether the depositions to be conducted in Cambodia will bear on

7   defendant's motion and whether, for this reason, holding a hearing on the motion

8   after the depositions have been completed would provide a fuller record that would

9   assist in deciding the motion."

10       On June 4, 2010, the parties filed their Joint Report pursuant to the Court's

11   Order.  Counsel for Mr. Fahlberg requested that the Court proceed with the hearing

12   prior to the depositions in Cambodia, and counsel for the government argued that

13   evidence obtained at the Cambodian depositions would support the government's

14   claims, and therefore, the hearing on Defendant's motion should be continued.

15       Specifically, counsel for the government stated:

16             the government believes that at least one of the witnesses who the
             parties are scheduled to depose in Cambodia next month will offer
17             testimony that is relevant to the issues raised in defendant's
             motion.  This witness, Channa Touch, has previously informed
18             that government that he served as defendant's "driver" on
             occasions when defendant traveled to Phnom Penh, Cambodia.
19             Mr. Touch has informed the government that on these occasions
             when he served as defendant's driver, he drove defendant to
20             various child brothels located in Cambodia and defendant made
             admissions to him about engaging in sex with young girls at these
21             locations. Mr. Touch's expected testimony directly contradicts
             assertions that defendant makes in support of his motion. (See
22             e.g.,  Defendant's Motion at p. 24 ("Mr. Fahlberg specifically
             denies having sexual relations with child prostitutes in brothels in
23             Cambodia")). Moreover, Mr. Touch's testimony supports the
             notion that the child victims in this case would have had the
24             opportunity that they claim they did to view defendant, one of the
             factors that this Court must consider when determining if the
25             testimony of these child victims is reliable. See Neil v. Biggers,
             409 U.S. 188, 199-200 (1972).

26

Joint Report at 4.

27

28       At this juncture, there have been no transcripts created by the government

1

reflecting the deposition testimony from Phnom Penh, Cambodia on July 19th and 20th, 2010. *See* Declaration of Counsel. Therefore, defense counsel, presents the following description of the testimony of the deposition witnesses, which, after the review of the contemporaneous notes written on counsel or counsel's associate's laptop during the witnesses' testimony, accurately reflects the substance of their testimony. *Id*. Government counsel has advised defense counsel that once transcripts are created of these depositions they will be lodged with the Court for review.

As demonstrated below, Mr. Touch's testimony in Phnom Penh, Cambodia on July 19, 2010 does not support the position proffered by the government that Mr. Fahlberg had a sexual interest in, or had sexual contact with, child prostitutes; and in facts supports the arguments set forth in Defendant's moving papers. Consequently, other than the testimony of the alleged victim child witnesses, whose identification of Mr. Fahlberg the defense argues is a product of suggestive government and NGO representatives influence, there is *no witness* who supports the position that Mr. Fahlberg had sexual contact with minors in brothels in Cambodia.

Further, as demonstrated below, the other depositions completed in Phnom Penh, Cambodia, on July 19th and 20th, 2010, of Defendant's witnesses Ier Phang, Nantatorn Cha-ingram, and Adam Parker, further support Defendant's position in his moving papers.

## II.
## DEPOSITION TESTIMONY IN PHNOM PENH, CAMBODIA
## JULY 19TH AND 20TH, 2010

A.   **GOVERNMENT WITNESS CHANNA TOUCH**

At his deposition, Mr. Touch testified as follows:

• He met Mr. Fahlberg approximately 6-7 years ago, and was Mr. Fahlberg's personal driver. He would see Mr. Fahlberg every 4 to 5 months, and Mr.

2

1    Fahlberg spent approximately 1 to 2 weeks in Phnom, Penh when he visited.

2  •  Mr. Fahlberg asked Mr. Touch to take him to the Svay Pak area of Phnom

3     Penh.  Mr. Fahlberg *did not* ask Mr. Touch to take him to where the younger

4     girls were working in brothels.  Svay Pak was a famous location for

5     Vietnamese prostitutes, but the majority of the prostitutes were of adult age.

6     Mr. Touch estimates that he took Mr. Fahlberg to Svay Pak approximately 5

7     times; somewhere between one and ten times.

8  •  Mr. Fahlberg would bring clothes, candy, balloons and school supplies to Svay

9     Pak.  The clothes consisted of casual clothes and school uniforms for both girls

10    and boys, and also clothes for adults.  Mr. Fahlberg gave these items out to the

11    boys and girls and adults on the street.  The groups of children that Mr.

12    Fahlberg interacted with in the streets of Svay Pak were of different ages.

13 •  Mr. Fahlberg would go in and out of several buildings, sometimes staying for

14    periods of 10 minutes to 30 minutes.

15 •  As for what Mr. Fahlberg told Mr. Touch with regard to Svay Pak:

16    -    Mr. Fahlberg did not tell Mr. Touch what type of women / girls he liked;

17    -    Mr. Fahlberg never spoke about what were the characteristics of the

18         women / girls he met at the brothels;

19    -    Mr. Fahlberg's discussions with Mr. Touch focused on the types of

20         items / presents he wanted to buy for the children of Svay Pak.

21 •  The government showed Mr. Touch a photo of a middle-aged Asian woman.

22    The government has represented that this woman was the head of a brothel

23    where child prostitutes worked in the Svay Pak area.  Mr. Touch recognized

24    this woman as a person in Svay Pak that he saw having coffee or lying on a

25    bed, but he did not know who she was and he did not ever speak to her inside a

26    particular house.

27 •  With regard to Mr. Touch's interview with the law enforcement agent in 2007:

28    -    Mr. Touch *did not* tell the agent that Mr. Fahlberg like young girls in

3

1    any sexual way.  Mr. Touch did tell the agent that Mr. Fahlberg "liked"
2    young girls based on the fact that he gave them presents.
3    -    Mr. Touch *did not* tell the agent that Mr. Fahlberg would tell him
4    anything about the women / girls he was with at any brothel.

5

6    Mr. Touch's testimony does confirm that Mr. Fahlberg visited the Svay Pak
7    area from 2003 through 2005, and that he acted as Mr. Fahlberg's driver.  However,
8    contrary to the government's characterization in the Joint Report filed with the Court,
9    Mr. Touch does not support: 1) that he drove defendant to various child brothels
10   located in Cambodia, or 2) that Mr. Fahlberg made admissions to him about engaging
11   in sex with young girls at these locations.  Rather, Mr. Fahlberg visited numerous
12   establishments in Svay Pak for brief time periods, without any reference to child
13   prostitutes, and Mr. Fahlberg never expressed any interest in child prostitutes to Mr.
14   Touch whatsoever.  The only reference to the children at Svay Pak stemmed from Mr.
15   Fahlberg's efforts to buy gifts for the children who greeted him on the streets,
16   consisting of casual clothes and school uniforms, candy, balloons and school
17   supplies.
18   Thus, in no manner does Mr. Touch's testimony "support[] the notion that the
19   child victims in this case would have had the opportunity that they claim they did to
20   view defendant [during sexual contact], one of the factors that this Court must
21   consider when determining if the testimony of these child victims is reliable." Joint
22   Report at 4.[1]
23   \\
24   \\
25   \\
26
27   _____
     [1]    The defense submits that Mr. Fahlberg had photographs of many
28   children from the Svay Pak area on his lap top computer, including the charged
     victims.  The defense contests, however, that Mr. Fahlberg had any sexual relations
     with these alleged victims.

4

**B.**      <u>DEFENSE WITNESSES</u>

     **1.**      **Ier Phang**

Ier Phang is a 30 year old Cambodian man who is married and has a son who is one year and eight months of age.  Ier worked for the restaurant affiliated with NCCLA – New Cambodian Children's Life Association – from 2002 until 2008.  At the restaurant and at NCCLA, Ier has worked directly with children who were without parents – who survived on the streets or the garbage dumps of Phnom Penh. All the time he worked for NCCLA he knew the approximately 25 children who lived in the orphanage.

Ier knew Mr. Fahlberg as a benefactor of the orphanage since 2002.  He would see Mr. Fahlberg every day Mr. Fahlberg visited Phnom Penh, which would be for one or two week periods, approximately three times per year.  Ier would watch Mr. Fahlberg interact with the children of the orphanage.  Mr. Fahlberg attended Ier's wedding, and Ier visited Mr. Fahlberg in Thailand.  Ier has had no contact with Mr. Fahlberg since 2008, and has received no money from Mr. Fahlberg.

Ier gave the opinion that Mr. Fahlberg had no sexual interest in minors under 14 years old.  On cross-examination, Ier was confronted with e-mails purportedly found on Mr. Fahlberg's computer reflecting sexual interest in children.  Ier maintained his opinion about Mr. Fahlberg's character, and testified that he did not believe Mr. Fahlberg had a sexual interest in children.

On redirect examination, Ier testified during the entire time period he worked for NCCLA, Mr. Fahlberg never asked, and was never known to be alone with a child; he never heard of Mr. Fahlberg touching a child inappropriately; and when Mr. Fahlberg took children from the orphanage on a trip to the water park, Mr. Fahlberg requested that a staff member of NCCLA accompany them.

\\

\\

\\

1          **2.     Nantatorn Cha-ingram**

2          Ms. Ch-ingram, who goes by the name Wenn, is a 23 year old Thai woman

3    who is studying for her Bachelor's of Science in computer science.  She is unmarried.

4     She comes from a rural section of northeast Thailand called Buri Ram.

5          Wenn met Mr. Fahlberg when she, her mother, and her sister walked the beach

6    of Pattaya, Thailand selling shirts and shorts to tourists.  She has known Mr. Fahlberg

7    since 2002, when she was 15 years old. Wenn is of a very slight stature, and at the

8    time she met Mr. Fahlberg she weighed approximately 20 kilograms, or about 40

9    pounds.  Mr. Fahlberg struck up a conversation with Wenn and she liked him.  Every

10   vacation from school, Wenn and her family worked in Pattaya, and she would always

11   meet Mr. Fahlberg.  She would engage in conversations with him in Thai.

12         Wenn never visited Mr. Fahlberg alone at his apartment, and she never felt

13   uncomfortable with him.  In 2007, when she was 20 years old, she would visit Mr.

14   Fahlberg with a friend and they would practice English.  Ultimately, Mr. Fahlberg

15   became like a family member, and on 4-5 occasions, he would rent a car and drive the

16   family back to northeast Thailand in Buri Ram.

17         Wenn opined that based on her interaction with Mr. Fahlberg for 6-7 years, she

18   believed he did not have a sexual interest in children who were 12-14 years old or

19   younger.

20         Defense counsel presented an e-mail, Government's Exhibit 103, to Wenn. *See*

21   Exhibit 103, attached hereto.  The e-mail, purportedly written by Mr. Fahlberg,

22   described a situation: where a Thai mother and her daughter sold shirts and shorts on

23   the beach in Pattaya; that the girl had gone back to school in northern Thailand; that

24   the girl would return to Pattaya for the new years vacation; that the girl had a quick

25   wit; and that the mother wanted Mr. Fahlberg to marry the girl.  Wenn reviewed this

26   description and, after focusing on the multiple variables described in the e-mail,

27   identified herself and her mother as the parties being discussed in the e-mail.

28   Specifically, Wenn stated that Mr. Fahlberg would comment that she was particularly

                                                    6

witty, and that her mother did speak about the prospect of Wenn marrying Mr. Fahlberg when she was of legal age in Thailand.

Then defense counsel focused on the statement in the e-mail that the girl was 11 years old, and that Mr. Fahlberg would have to "thump" (have sex with) the daughter to please the mother.  In response to this statement, Wenn testified that she viewed this statement as a joke, that she never had any sexual relations with Mr. Fahlberg, nor did he ask her to engage in any sexual relations.  With regard to the representation that Wenn was 11 years old at the time of the e-mail, Wenn also stated that Mr. Fahlberg probably did not remember or did not know her age.

On redirect examination, Wenn stated that she never felt afraid of Mr. Fahlberg and never saw him naked, nor had she ever been naked in front of him.

### 3.    Adam Parker

Adam Parker is an unmarried 46 year old British citizen who has been living continuously in Phnom Penh, Cambodia for 17 years.  He is the owner and publisher of the magazine Bayon Pearnik, a tourism magazine for ex-patriots from western countries, as well as tourists visiting Cambodia.  The magazine focuses on the bar culture in Cambodia.

Mr. Parker met Mr. Fahlberg in 2003-2003 in Phnom Penh, and he would see Mr. Fahlberg every time Mr. Fahlberg visited Phnom Penh, approximately 3-4 times per year.  He would drink at bars with Mr. Fahlberg in Phnom Penh, and traveled with Mr. Fahlberg to the beach area of Cambodia.  He witnessed Mr. Fahlberg with adult prostitutes and with girlfriends. Mr. Parker visited a brothel with Mr. Fahlberg on one occasion.

Mr. Parker was aware of Mr. Fahlberg's commitment to the NCCLA orphanage, and that Mr. Fahlberg purchased an ad for the restaurant linked to NCCLA with Mr. Parker's magazine.  Mr. Parker also knew that Mr. Fahlberg had a particular interest in adult women who were petite, which was very common in

1  Cambodia.

2      Mr. Parker knew the Svay Pak area, had visited Svay Pak himself, and was

3  advised by Mr. Fahlberg that he visited the Svay Pak area.  The Svay Pak area during

4  2002 until 2005 – when the brothels closed, was a location for Vietnamese

5  prostitutes, the majority of whom were above age.

6      Mr. Parker had overheard Mr. Fahlberg make crude / crass jokes about women

7  in the past.

8      Mr. Parker stated that Mr. Fahlberg did not have a reputation in the ex-patriot

9  bar community for having a sexual interest in minors under the age of 14, and that in

10 his opinion, Mr. Fahlberg did not have any interest in having sexual relations with

11 minors under age 14.

12     After being shown various e-mails by the prosecution, on redirect examination,

13 Mr. Parker stated that he never saw Mr. Fahlberg leer or act in any way that caused

14 him to think he was sexually interested in minor girls.  Mr. Parker testified that Mr.

15 Fahlberg had been to a brothel with him at the beach town of Siahnookville, and that

16 Mr. Fahlberg was involved with a prostitute who was 25 years old.  Mr. Parker stated

17 that Mr. Fahlberg would sometimes visit Phnom Penh with his girlfriend from

18 Thailand, and she was clearly above age.

19

20                                    **III.**

21                              **CONCLUSION**

22     Defendant's Motion to Suppress Identification Testimony of L.T.K.G.,

23 D.T.M.V., and D.T.M.T. reveals the fact that the government failed to create a photo

24 spread of suspects other than Mr. Fahlberg, and the government, and more than likely

25 the NGO representatives, had practice sessions with the alleged victims.  This

26 unrefuted evidence was then analyzed by Defendant's expert, Dr. Michael Maloney,

27 who found that the suggestibility of the interviews themselves was transparent.

28 Further, Dr. Maloney's analysis, juxtaposed with Professor Emmanuel Dialma's

                                      8

description of the culture of this particular group of witnesses – Vietnamese child sex workers living in Cambodia – undermines the reliability of the alleged victims' identification of Mr. Fahlberg.

Prior to the depositions in Phnom Penh, Cambodia, the government hoped that the testimony of Mr. Fahlberg's driver, Mr. Channa Touch, would bolster the victim girl's reliability in that an independent witness would support the position that Mr. Fahlberg had sexual interest in young girls and that he traveled to the brothel district of Svay Pak to have sexual relations with child prostitutes.  This proffer by the government has not been realized.

Instead, not only is there no other witness beyond the purported victim girls that could testify that Mr. Fahlberg *ever* had sexual relations with minor girls in Svay Pak or any other locale, but also, Mr. Touch provides exculpatory evidence for Mr. Fahlberg.  Mr. Fahlberg's visits to Svay Pak reveal that he gave presents to all the children in the streets – both boys and girls – including school uniforms and school supplies, and that the majority of the prostitutes in the Svay Pak area during the years 2002-2005 were adult prostitutes, not minors.  Mr. Touch's opinion that the majority of the prostitutes at Svay Pak at this time period were adults is also confirmed by Professor Dialma in his supplemental declaration filed with the Court, and by the testimony of Adam Parker.

Further, the testimony of Ier Phang, Nantatorn Cha-ingram, and Adam Parker – individuals who know Mr. Fahlberg during the very period in question and have all known him continuously for at least 6 years – who stem from the NCCLA orphanage, his home in Thailand, and the ex-patriot community in Phnom Penh, respectively, all opine that Mr. Fahlberg showed no sexual interest in minor girls under 14 years old.

What is before the Court is the testimony of three victim girls,[2] who the

---

[2]     The government has advised defense counsel that it will be dismissing count 2 of the First Superseding Indictment, a violation of 18 U.S.C. § 2423(b) with D.T.M.T.

1    government either intentionally or inadvertently influenced into identifying the

2    photograph of Mr. Fahlberg.  Other than non-nude photographs of these girls – plus

3    many more fully-clothed children from Southeast Asia – on Mr. Fahlberg's computer,

4    there is nothing to corroborate this testimony.

5         Consequently, Defendant's Motion, in which the Court has granted an

6    evidentiary hearing where the alleged victims will testify, is on more solid foundation

7    after the Rule 15 depositions.

8

9                              Respectfully submitted,

10

11                             KAYE, McLANE & BEDNARSKI, LLP

12

13   DATED: August 2, 2010      By_____/S/_____

14                              RONALD O. KAYE
                                Attorneys for Curtis David Fahlberg

15

16

17

18

19

20

21

22

23

24

25

26

27

28